**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Campbell, | No. CV-20-02048-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Jennifer Campbell's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of social security disability benefits. (Doc. 18). The appeal is fully briefed (Doc. 18, Doc. 21, Doc. 22), and the Court now rules.

## I. BACKGROUND

The issues presented in this appeal are whether Plaintiff was deprived of a valid adjudicatory process, whether substantial evidence supports the Administrative Law Judge's ("ALJ") determination that Plaintiff was not disabled from January 1, 2014 to February 13, 2020, and whether the ALJ committed legal error in her analysis. (Doc. 18 at 1).

### a. Factual Overview

Plaintiff was 40 years old at the time of her alleged onset date. (Doc. 16-3 at 33). She has a high school education and past relevant work experience as an office machine sales representative, accounts receivable clerk, and a nurse assistant. (*Id.*) Plaintiff filed her

social security disability claim on March 13, 2017, alleging disabilities beginning on January 1, 2014, including bipolar disorder, borderline personality disorder ("BPD"), posttraumatic stress disorder ("PTSD"), alcohol use disorder, fibromyalgia, and degenerative joint disease of the left ankle. (*Id.* at 19, 22). An ALJ denied Plaintiff's claim on February 13, 2020. (*Id.* at 35). The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (*Id.* at 2).

### b. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a

claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c. The ALJ's Application of the Factors

Here, at the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (Doc. 16-3 at 22).

At the second step, the ALJ determined that Plaintiff's bipolar disorder, BPD, PTSD, alcohol use disorder, fibromyalgia, and degenerative joint disease of the left ankle constituted severe impairments under 20 C.F.R. § 404.1520(c). (*Id.* at 22). The ALJ also determined that the rest of Plaintiff's alleged impairments were non-severe. (*Id.* at 22–23).

At the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 23). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) "except that she can frequently operate foot controls with the left lower extremity, she can never climb ladders, ropes, and scaffolds, she can frequently climb ramps and stairs, [and she can] frequently balance, crouch, kneel, and crawl." (*Id.* at 26). The ALJ also found that Plaintiff cannot be exposed

to dangerous machinery with moving mechanical parts nor to unprotected heights or driving duties. (*Id.*) The ALJ also found that Plaintiff:

> could perform work involving understanding, remembering, and carrying out simple instructions, work requiring simple judgment, work with occasional routine changes in the work setting, could perform tasks that can be learned by demonstration within 30 days, work with brief superficial in-person interaction with the public, but no working in tandem with co-workers, and no work involving fast paced production rate quotas.

(*Id.*)

At the fourth step, the ALJ concluded that Plaintiff is unable to perform past relevant work as an office machine sales representative, accounts receivable clerk, or a nurse assistant. (*Id.* at 33).

At the fifth and final step, the ALJ concluded that given Plaintiff's age, education, work experience, RFC, and the Medical-Vocational Guidelines set out in 20 C.F.R. Part 404, Subpart P, Appendix 2, a significant number of jobs existed in the national economy that she could have performed. (*Id.* at 33–34). Accordingly, the ALJ determined that Plaintiff was not disabled. (*Id.* at 35).

## II.     LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means … such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450,

1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

### III. DISCUSSION

Plaintiff argues that (1) she has been deprived of a valid adjudicatory process due to the unconstitutional structure of the Social Security Administration; and (2) the ALJ erred in finding that Plaintiff could perform jobs exceeding her determined RFC. The Court addresses each in turn.

#### a. Unconstitutional Removal Protections

Plaintiff argues that the ALJ's decision is constitutionally defective in light of the allegedly unconstitutional statutory removal restriction contained in 42 U.S.C. § 902(a)(3), which limits the President's authority to remove the Commissioner of Social Security without cause. (Doc. 18 at 10).

Generally, restrictions on Presidential removal powers of an agency director violate the separation of powers and render an agency's structure unconstitutional. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (June 20, 2020); *Collins v. Yellen*, 141 S. Ct. 1761, 1786–87 (2021). However, the Supreme Court recently held that plaintiffs must show "compensable harm" to seek legal remedies on this basis. *Collins*, 141 S. Ct. 1761 at 1787–89. First, the agency action complained of must have been taken by a director subject to an unconstitutional removal restriction. *Id.* at 1787. Additionally, plaintiffs must be able to point to some compensable harm that they suffered as a result of the unconstitutional removal restriction preventing a director's removal. *Id.* at 1789.

Defendant concedes that under *Collins*, 42 U.S.C. § 902(a)(3) violates the separation of powers "to the extent it is construed as limiting the President's authority to remove the Commissioner without cause," but argues that the unconstitutionality of 42 U.S.C. § 902(a)(3) has no bearing on whether the ALJ's disability determination should be upheld

because Plaintiff has not shown that the unconstitutional provision has caused her harm. (Doc. 21 at 4–5).

Whether *Collins* is actually applicable to this case is an open question because the current Commissioner of Social Security, Kilolo Kijakazi, is only an "Acting" Commissioner who may not be subject to the same removal provision analyzed in *Collins*. Further, Carolyn Colvin, who served as the Commissioner of Social Security during President Obama's two terms, was also only the "Acting" Commissioner of Social Security. The Court did not review who the Commissioner of Social Security was at the relevant time of all actions underlying the decision in Plaintiff's case. Nonetheless, the Court notes that some courts have concluded that the social security removal statute is broad enough to include even Acting Commissioners. *Dante v. Saul*, No. 20-0702 KBM, 2021 WL 2936576, at *8 (D.N.M. July 13, 2021) ("The plain language of § 902(a) suggests that the Presidential removal restrictions may apply to a Senate-confirmed Commissioner, but also to any individual serving in the office of Commissioner, including an Acting Commissioner."); *see also Sylivia v. Kijakazi*, No. 5:21-CV-076-M-BQ, 2021 WL 4692293, at *3 (N.D. Tex. Sept. 13, 2021) (citing *Dante v. Saul* approvingly).

Regardless, however, and assuming *Collins* applies to this case, for Plaintiff to be entitled to relief under *Collins*, Plaintiff must show that her harm, in this case her unfavorable decision, was tied to the unconstitutional removal provision. *Collins*, 141 S. Ct. 1761 at 1787–89. Plaintiff contends that her harm stems from her unfavorable disability determination decision—a decision that resulted from the Commissioner's unauthorized delegation of authority and promulgation of rules that affected the outcome. (Doc. 18 at 11). However, the *Collins* Court made clear that "the unlawfulness of the removal provision does not strip [agency directors] of the power to undertake the other responsibilities of their office," particularly where there is no argument that the director was not properly appointed. *Collins*, 141 S. Ct. 1761 at 1788, n. 23 (citing *Seila Law*, 140 S. Ct. 2183 at 2207–11).

Here, Plaintiff does not contest the ALJ's or the Commissioner's proper

appointments. And while Plaintiff alleges that Andrew Saul served as A Senate-confirmed Commissioner during her hearing and he received the benefit of unconstitutional removal protections (Doc. 18 at 11), the Court makes no judgment on whether Saul's tenure as Commissioner tainted Plaintiff's adjudication because Plaintiff does not allege that the ALJ presiding over Plaintiff's case was appointed during Saul's tenure or otherwise received her authority to adjudicate social security claims directly from him. Moreover, Plaintiff does not specify which social security rules, if any, were promulgated by Saul during his tenure and applied in Plaintiff's case. Therefore, the Court finds that Plaintiff has not stated a compensable harm tied to Saul's actions or his unconstitutional removal protections that would warrant a new hearing in this case.

### b.  Conflicts Between Jobs Identified at Step Five and Plaintiff's RFC

Plaintiff argues that the ALJ erred in finding that Plaintiff could perform jobs defined as having a Level Two reasoning requirement in view of the ALJ's RFC determination that Plaintiff is limited to work involving only simple instructions. (Doc. 18 at 13). Plaintiff argues that an RFC limitation of "simple instructions" precludes jobs with Level Two reasoning because they require "detailed but uninvolved written or oral instruction." (*Id.*)

At step five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] identified limitations.'" *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). Relying on vocational expert (VE) testimony, an ALJ may consult the Dictionary of Occupational Titles (DOT) to identify jobs in the national economy that are consistent with a claimant's determined RFC. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see also* 20 C.F.R. §§ 416.969, 416.966(d)(1). Appendix C to the DOT sets forth criteria for evaluating jobs based on their physical and mental requirements. DOT (4th ed. 1991) Appx. C, 1991 WL 688702. As relevant here, the DOT uses General Educational Development (GED) Reasoning Levels that apply to each job. *Id.* GED Reasoning Levels define "those aspects of education

(formal and informal) which are required of the worker for satisfactory job performance." *Id.* at III. Level Two positions require that a claimant be able to "apply commonsense understanding to carry out **detailed but uninvolved written or oral instructions**." *Id.* (emphasis added). In contrast, Level One positions require only that a claimant be able to "apply commonsense understanding to **carry out simple one- or two-step instructions**." *Id.* (emphasis added).

As discussed above, in evaluating the Plaintiff's RFC, the ALJ determined that Plaintiff had nonexertional limitations due to her mental impairments, such that Plaintiff's RFC was limited to "perform[ing] work involving understanding, remembering, and carrying out simple instructions, work requiring simple judgment, … [and] perform[ing] tasks that can be learned by demonstration within 30 days." (Doc. 16-3 at 26).

In accordance with Plaintiff's RFC, the VE testified that based on Plaintiff's age, education, experience, and RFC, Plaintiff is capable of successfully transitioning to other work as a collator operator, photocopy machine operator (nonretail setting), or a silver wrapper. (Doc. 16-3 at 34). According to the DOT, all of these jobs require Level Two reasoning, including "detailed but uninvolved written or oral instructions." DOT (4th ed. 1991) § 208.685-010, 1991 WL 671753 (collator operator); *id.* § 208.685-014, 1991 WL 671745 (photocopy machine operator); 1991 WL 672757 (silver wrapper). The ALJ accepted the VE's testimony because the ALJ "determined that the [VE]'s testimony [was] consistent with the information contained in the Dictionary of Occupational Titles" and was properly based on "his experience in vocational rehabilitation, employer interviews, labor market surveys and personal observation of jobs." (Doc 16-3 at 34). Plaintiff contends that there is an apparent conflict between her RFC and the identified jobs. (Doc. 18 at 13).

"When there is an apparent conflict between the [VE]'s testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). During the hearing, the ALJ must ask the VE to explain the conflict and then decide whether the

explanation is reasonable before relying on the VE's testimony in determining a claimant's disability status. *Id.* If the ALJ fails to resolve any apparent conflicts between the identified jobs and a claimant's RFC, a reviewing court may be precluded from determining if substantial evidence supports the ALJ's findings. *Id.*

Specifically, Plaintiff argues that because the identified jobs are defined as Level Two reasoning occupations, those jobs are inconsistent with her determined RFC limiting her to work "involving understanding, remembering, and carrying out simple instructions." (*Id.*) "This argument is without merit as courts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two." *Staples v. Acting Comm'r of Soc. Sec. Admin.*, No. CV 17-03253-PHX-ESW, 2018 WL 3238448, at *6 (D. Ariz. July 3, 2018) (quotations omitted) (collecting cases). While Plaintiff relies on *Rounds v. Comm'r Soc. Sec. Admin.,* 807 F.3d 996 (9th Cir. 2015) for its position that an RFC limitation to "simple instructions" demands jobs with Level One reasoning, the Ninth Circuit expressly distinguished its holding from other decisions because the RFC in *Rounds* explicitly included a limitation to "one- or two-step tasks." *Rounds*, 807 F.3d at 1004 ("In his RFC assessment, the ALJ did not merely restrict Rounds to 'simple' or 'repetitive' tasks."). As in other Ninth Circuit decisions, here too, where an RFC does not specifically call out one- or two-step instructions, "an RFC limitation to simple or repetitive tasks is consistent with Level Two reasoning." *Id.* at 1004, n. 6 (collecting cases). Because Plaintiff's RFC is not limited to one- or two-step instructions, the Court finds no apparent conflict between Plaintiff's RFC and the identified jobs requiring "detailed but uninvolved instructions." *Barnes v. Colvin*, No. 6:14-cv-01906-HZ, 2015 WL 8160669, at *4 (D. Or. Dec. 7, 2015) ("Considering the entire phrase, 'detailed but uninvolved,' [this Court] find[s] that while the instructions may be detailed, they may also be simple." (quotations omitted)).

Accordingly, the Court finds that the ALJ did not err at step five.

### c. Further Proceedings

Plaintiff requests a remand for a new hearing in front of a new ALJ to address the

alleged errors in the ALJ's decision. (Doc. 18 at 13–14). However, because the Court is affirming the ALJ's decision, the Court denies Plaintiff's request for a remand.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 4th Day of January, 2022.

James A. Teilborg
Senior United States District Judge